LEVI H. MARSH & another *vs.* PETER RENTON & others.

A testator gave to trustees property variously invested, " to be disposed of for the benefit of the poor in the manner hereinafter provided; " and directed the trustees and their successors to appoint a committee of three or more gentlemen who should " determine how, by the payments to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect," and to dispose of and pay over the trust fund " in accordance with the determination of the said gentlemen certified by them to the trustees." The trustees selected the committee, who determined that certain sums expressed in money should be paid to various corporations of the kind described, and that if the trust fund should exceed the aggregate of these sums " the residue is to be subject of future disposal by us." Some years afterwards elapsed before the trustees became able to reduce the fund to money and pay it over ; the residue of the fund at the time of the determination of the committee was more than the aggregate sum which they apportioned; and during the interval the income of the fund accumulated at a rate greater than the legal rate of interest, and one of the committee died. *Held,* that the corporations designated were not entitled to take the income of any specific part of the fund, nor shares of the whole income proportioned to the sums designated to be paid to them: but to receive the amount of legal interest on such sums from the time of the report of the committee; and that any surplus of the income, after payment of such interest, should be added to the fund for further distribution. *Held, also,* that the vacancy on the committee could be filled by appointment by the trustees; and that no further distribution of the fund could be made until after the filling of such vacancy. *Held, further,* that in such further distribution the committee might designate payments to institutions of the kind described in the will incorporated since the creation of the trust.

BILL IN EQUITY by trustees under the will of Mrs. Abigail Loring to obtain instructions relating to the disposal of the trust

fund. The facts were agreed, and those which are material were as follows:

Mrs. Loring by her will gave the residue of her estate to the plaintiff Marsh and Samuel E. Guild, as trustees, to "be disposed of for the benefit of the poor, in the manner hereinafter provided: It is my will that when" "the trust fund is to be disposed of as aforesaid, the said Marsh and Guild, or their successors as trustees, shall select and appoint three or more gentlemen, who shall be informed of the facts by the trustees, and shall determine how, by the payments to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect and my gift may be made most productive of benefit to the poor; and that thereupon the said trust fund" "shall be disposed of and paid over, in accordance with the determination of the said gentlemen, certified by them in writing to the trustees."

On the decease of the testatrix, Mr. Guild having died previously, Mr. Marsh was appointed sole executor and trustee, and, in execution of the trust, he selected a committee of three gentlemen to determine how the fund should be distributed; and they directed $171,000 to be paid, in various sums, to the Massachusetts General Hospital and numerous other charitable institutions. The fund being in various kinds of property, its exact cash value could not be determined until it should be converted into money; and therefore the committee provided in their certificate, which was dated December 20, 1863, that "if it should exceed the aggregate of $171,000 in any amount not beyond $5000, we appoint such excess to be paid to the Massachusetts General Hospital for the purchase of free beds; and if the excess should exceed $5000, the residue is to be subject of future disposal by us."

The trustee was about to sell the property and distribute the proceeds, when a claim was preferred against the fund in his hands, by the heirs at law of Mrs. Loring and by the administrator of one of her children, which ultimately became the subject of a suit in tne courts of the United States, prosecuted on the ground that the devise for the benefit of the poor was void,

and that the powers given to two trustees could not be executed by one. The trustee filed this bill against said claimants and the charitable institutions; and while it was pending the suit above referred to was commenced, and the validity of the will and the devise to charities were established by a final decree in the supreme court of the United States [*Lorings* v. *Marsh*, 6 Wallace, 337]; whereupon this bill was, by consent, dismissed as to all the defendants except the charitable institutions.

During the interval caused by this litigation, the fund was increased by accumulations of income largely more than it would have been if the property had been sold and the proceeds put on interest; and, so far as can be determined, the residue of the fund at the time when the apportionment was made by the committee did exceed $5000.

During the interval, also, one member of the committee died; and a co-trustee with Mr. Marsh was appointed and joined with him as a plaintiff.

The matters on which the trustees finally asked the instructions of the court were as follows: 1. Are the charitable institutions entitled to their respective proportions of the income of the $171,000 directed to be paid to them? 2. If not, are they entitled to interest on the sums directed to be paid to them from the time of the appointment, or any other time? 3. If not, what disposition shall be made of said income? 4. Can the surviving members of the committee direct how the surplus fund shall be distributed? 5. If not, and a new member should be appointed, by whom should he be selected and appointed?

The case was reserved by *Gray*, J., on these facts, for the determination of the full court; and at the argument instructions were asked on the further question, Whether in executing this charitable trust institutions organized as corporations since the creation of the trust may be selected as recipients of any portion of the fund?

*C. W. Loring*, for the plaintiffs.

*F. C. Loring*, for the defendants.

WELLS, J. The will authorized the distribution of the trust fund in such mode as the committee of gentlemen, to be se-

lected, should determine. They appointed definite sums to be paid to each institution named by them as recipients; with a provision as to any residue that might be found to exist. This appointment did not vest in those institutions an interest in any portion of the fund specifically; and, although the intention was to distribute the entire fund, the provision as to the surplus shows conclusively that the amount assigned to each institution did not represent a proportionate share of the whole. It is therefore impossible to say that the several institutions are entitled to take the income of any specific part of the fund; or to take a share of the whole income proportioned to the amount of the principal designated to be paid them. They are entitled to the usual allowance of interest from the time the legacy became payable; namely, from the return of the report of the committee. If the income had been less than six per cent., they would not have been obliged to abate any part of their claim for full interest, unless the whole fund had proved insufficient to pay it. It is not the case of an executor or trustee neglecting to set apart a fund, contrary to his duty, and taking to himself the advantage of the greater income. In such a case, he might be charged with a trust, in favor of the party whose fund he had withheld and used, for the full amount of income received. Here, he is chargeable simply as trustee of the whole fund, under the will; and is in no fault for the retention and delay in the separation of the several interests therein. He must indeed account for the whole income; but he is to do so only as the general trustee under the will; and the benefit from an income greater than interest will accrue, as would the loss if it had been less, to the surplus. This disposes of three of the questions submitted to us.

The fourth and fifth relate to the appointment of one to fill the place of a member of the committee who has died since the first report. The will contemplates the concurrent action of three or more gentlemen. We are of opinion that no further distribution can be made until the vacancy is filled; and that it can only be filled by the selection and appointment of the trustees acting under the will.

Another question has been discussed before us, and instructions asked thereon ; namely, Whether, in executing this charitable trust, institutions organized as corporations since the creation of the trust may be selected as recipients of any portion of the fund ?   As the bequest was not made for the benefit of any particular institution, and as they are to be selected merely as means or instruments to carry out the charitable purposes of the testatrix, we can have no doubt that payments may be directed to be made to any institution, which, at the time of such appointment, comes within the description of a " permanently established and incorporated charitable institution."                                    *Instructions accordingly.*